[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 35 whose birth name is Kulichova, and the defendant husband, 36, married on November 28, 1987, in Martin, Slovakia. There are two children issue of the marriage, Michal(?) Born July 26, 1987 and Ingrid, born March 19, 1989. The parties have stipulated that they shall share legal custody and the children's principal residence shall be with the mother and the father shall have liberal and flexible visitation rights. (151-10) No other child has been born to the plaintiff since said marriage. The plaintiff has been living in this state continuously for over one year immediately prior to commencing this action for dissolution of their marriage and other relief, thereby providing this court with jurisdiction over the action. Both parties are seeking a dissolution on the ground of irretrievable breakdown.
The parties were both born and raised in Slovakia. The defendant was serving in the army when he married the plaintiff. He has one minor child of an earlier marriage now 17 years old. He has paid voluntary child support monthly in the local currency equal to $100 U.S. The defendant came to this country in July, 1992 and the plaintiff followed him to the U.S.A. in November, 1992, settling in Bridgeport, Connecticut. After arriving in the U.S.A. in 1992 as visitors the defendant became employed as a roofer and the plaintiff became employed by a home cleaning agency. She was able to work 50 to 60 hours weekly for her children remained in Slovakia until February, 1995 when they joined their parents. Their grandmothers furnished child care until they began school the following September.
The plaintiff began her own cleaning business and after six months was able to work full time earning $10 hourly, a substantial advance beyond her employee wage. During the summer of 1994 they moved to Stamford. About 1995 the defendant began his own roofing business d/b/a R.H. Roofing. The business prospered, enabling the defendant to acquire more equipment, a second vehicle and hire employees. The business suffered a setback when it undertook to work on a commercial building in 1997. The job was abandoned, unfinished in 1998. The dispute was settled with the defendant agreeing to pay $40,000, of which $16,000 is still owed. The defendant is currently a subcontractor for two builders, one furnishing him with 80% and the other 20% of his jobs. The defendant testified that "cash" jobs for last year totaled $3800 or 1% of his total gross receipts. The court accepts his statement regarding-cash-jobs in light of the-two sources for the bulk of his jobs. Throughout this business career the defendant has maintained minimal records, has retained an accountant that he depends on but has never employed a bookkeeper. How he raised the funds to purchase his home only months after giving money to his wife when she was returning to Slovakia has not been made clear to the court.
The parties separated on April 26, 1997 when the plaintiff returned to CT Page 8131 Slovakia, taking both children with her. The plaintiff claims the marriage was not broken down although she testified that she obtained medical treatment there for a broken eardrum caused when the defendant struck her in late 1997. However, the plaintiff told a doctor she fell from a chair when she received treatment on April 21, 1997 (Defendant's Exhibit J). No other corroborating evidence was introduced. The court concludes that the plaintiff did not suffer physical abuse. Before leaving the plaintiff was given $37,000, including the proceeds from the sale of plaintiff's auto, by the defendant. Immediately after she left the defendant began cohabiting with another woman. This liaison has continued to the time of trial. Two children have been born to the defendant and his companion. The defendant purchased a home in Wilton in October, 1997 for $210,000 with a $40,000 down payment including $9,000 contributed by his companion. The defendant pays the mortgage installments, taxes, utilities and maintains the premises. The warranty deed lists the defendant as the sole grantee (Plaintiff's Exhibit 12). He is the sole maker of the $168,000 mortgage placed on the premises at the time of purchase (Plaintiff's Exhibit 13). The plaintiff's real estate appraiser concluded, using comparable sales, that the defendant's house has a fair market value of $345,000 as of November 27, 2001 (Plaintiff's Exhibit 4). The three comparable sales were similar in gross living area and only one was beyond 1.8 miles away. The defendant's appraiser, also using the sales comparison approach, found the fair market value to be $235,000 as of February 7, 2002 (Defendant's Exhibit A). The three comparable sales were of premises containing less than 1000 sq. ft. and fewer rooms. Comparable #2 and #3 were four and five miles away respectively. The defendant's financial affidavit lists $270,000 as the value of the premises. The court concludes that the plaintiff's appraisal more accurately reflects current fair market value and finds 22 West Church Street, Wilton currently worth $345,000. The increase in value is $135,000 and much of it is passive due to market conditions.
After she returned to Slovakia, the plaintiff was served by the defendant on three occasions with legal documents wherein he sought a divorce. The plaintiff filed an answer with the court opposing the divorce and among other statements she declared "Considering the fact I'm unemployed. . . ." (Defendant's Exhibit E). However, her recent resume states that she was employed from "5/97 — 6/00 Vlado Valkovsky, Exporting CO. martin, Slovakia" (Defendant's Exhibit L). At trial she testified that she worked for this company as a translator for 10 to 15 hours weekly. Said resume states "Administrative Assistant/Office Manager. Duties included: — Payroll-Accounting/Bookkeeping-Receptionist Phone calls Business letters-Translation Interpreter." The court points out these discrepancies for each party's version of the underlying reasons for their separation are dramatically different and mostly irreconcilable. CT Page 8132
The defendant believed the marriage was viable until the following events occurred. The defendant testified that he and the plaintiff no longer occupied the same bed after the Summer of 1996 and that they last engaged in sexual relations in September, 1996. The defendant first met his current companion in January, 1997 and they became intimate a month later. The defendant acknowledged it was his suggestion that they live together. He stated that the money given to his wife when she returned to Slovakia was with the understanding that she would begin a divorce action. Instead, she demanded more money so she could buy real estate. The court finds this explanation more plausible than the plaintiff's description of a plan to divorce her, marry a U.S.A. citizen to acquire his citizenship, then divorce that wife and remarry the plaintiff. Not only is there no corroboration but the defendant's behavior is consistent with a marriage breakdown. He attributes the breakdown to the plaintiff's newly found religious fervor accompanied by rejection of his physical advances. His adultery is found to be the primary cause of the marriage breakdown with the plaintiff's behavior also being a significant factor. The defendant's assertion that the plaintiff abandoned him flies in the face of her remaining in this country without a green card or other lawful reason thereby risking eventual deportation. The defendant's claim that the money given to plaintiff when she was returning to Slovakia was an equitable distribution of marital assets is contrary to the facts and applicable law. The defendant was free to initiate a dissolution action in this court at any time he wished but urged the plaintiff to do so in Slovakia. The court draws no inference from the fact that the plaintiff, now with a valid green card, has resumed residence here and has begun this action.
The parties possessed little worldly goods when mated. The defendant was then serving in the army. The plaintiff possessed an apartment in Martin. While in the U.S. she rented it. (Defendant's Exhibit O). She continues to be the tenant of record (Defendant's Exhibit K). Any other assets the parties had or have were acquired after 1992.
The plaintiff was able to obtain a green card with the assistance of Dr. K. Fairbanks who had employed the plaintiff before her return to Slovakia and who has assisted her in finding housing for herself and two children. The plaintiff then returned to the U.S.A. with the children. Since September, 2000 she has been employed by Corporate Culinary Service of Stamford earning $463 weekly net after mandatory deductions. She has enrolled in a course at Norwalk Community College.
The defendant's financial affidavit (154-10) states gross weekly wage of $1650, deductions of $458 and net weekly of $1192. Section46b-215a-2a (e) requires a determination of a single theoretical CT Page 8133 presumptive current support amount for all the minor children of the defendant but excluding plaintiff's income. The plaintiff's worksheet failed to apply the formula. The court accepts the defendant's worksheet and will order child support of $229 and that he pay 65% of any unreimbursed medical expenses incurred for their children.
The court finds that both parties are in generally good health but noted that the plaintiff testified to taking iron pills for anemic condition. The defendant has the greater earning capacity and the greater opportunity for the acquisition of capital assets and income in the future. The court also concludes that the parties' marriage was viable for at least ten years. The court finds it appropriate to award rehabilitative alimony for a limited period of time, Ippolito v.Ippolito, 28 Conn. App. 745. The claim of the defendant that the plaintiff contributed nothing to the acquisition of assets during the marriage ignores the fact that the plaintiff was the principal care giver for the children from birth to late 1992 and from April, 1997 forward, O'Neillv. O'Neill, 13 Conn. App. 300, 311.
The court has considered the evidence in light of the relevant case law and states in framing the following decree:
 1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown. Each party is declared unmarried.
 2. The parties are awarded joint legal custody of their minor children with physical custody with the plaintiff and the defendant given liberal and flexible visitation.
 3. The defendant is ordered to pay to the plaintiff as child support $229 weekly and that he pay 65% of any unreimbursed medical expenses incurred for the children. Any arrears existing on the temporary order shall be paid in full within 30 days.
 4. The defendant shall pay to the plaintiff as periodic alimony the sum of $150 weekly for the period of 48 months or until the sooner death of either party, the remarriage of the plaintiff, or her cohabitation as defined by statute and case law. The said term is non modifiable under any condition but the sum ordered is modifiable.
5. The plaintiff is awarded $50,000 lump sum alimony CT Page 8134 payable $25,000 in ninety days and the balance on or before December 31, 2002.
 6. The defendant shall retain the real estate, his business, his vehicles, his household furnishings and his bank accounts as his sole property.
 7. The plaintiff shall retain the Slovakia apartment lease, her bank accounts and her miscellaneous personal property.
So Ordered.
HARRIGAN, J.T.R.